1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                   CENTRAL DISTRICT OF CALIFORNIA

8

9   The Prudential Insurance    )   CV 13-07429 RSWL (AJWx)
    Company of America,          )
10                               )   **ORDER RE: PLAINTIFF THE**
                    Plaintiff,   )   **PRUDENTIAL INSURANCE**
11       v.                      )   **COMPANY OF AMERICA'S**
                                 )   **MOTION FOR SUMMARY**
12  P. Kellie Brimberry;         )   **JUDGMENT [120] AND**
    Fiduciary Trust Company      )   **DEFENDANT P. KELLIE**
13  International; Fiduciary      )   **BRIMBERRY'S MOTION FOR**
    Trust International of       )   **SUMMARY JUDGMENT [121]**
14  California; Franklin          )
    Templeton Companies, LLC,     )
15                               )
                    Defendants.   )
16  _____)
                                 )
17  P. Kellie Brimberry,          )
                                 )
18         Cross-Claimant,        )
                                 )
19       v.                      )
                                 )
20  Franklin Templeton           )
    Companies, LLC Group         )
21  Contract G-50408-CA;         )
    Fiduciary Trust Company      )
22  International; Fiduciary      )
    Trust International of       )
23  California; Franklin          )
    Templeton Companies, LLC;    )
24  The Prudential Insurance     )
    Company of America; and      )
25  Does 1 through 50,            )
    inclusive,                   )
26                               )
                                 )
27         Cross-Defendants.      )
    _____)
28  //

1

1    Currently before the Court are Plaintiff The
2    Prudential Insurance Company of America's
3    ("Prudential") Motion for Summary Judgment [120] and
4    Defendant P. Kellie Brimberry's ("Mrs. Brimberry")
5    Motion for Summary Judgment [121].  The Court, having
6    reviewed all papers submitted pertaining to these
7    Motions, **NOW FINDS AND RULES AS FOLLOWS:**

8    The Court **GRANTS** Prudential's Motion for Summary
9    Judgment and **DENIES** Mrs. Brimberry's Motion for Summary
10   Judgment.

11                        **I. BACKGROUND**

12   **A.   Factual Background**

13   Mrs. Brimberry was married to Kurt A. Brimberry
14   ("Mr. Brimberry" or "the Insured") up until the date of
15   his death.  Am. Interpleader Compl. ¶ 2.  Mrs.
16   Brimberry was the Insured's designated beneficiary.
17   Id.

18   The Insured was employed with Franklin Templeton
19   Companies, LLC ("Franklin"), an investment management
20   firm.  Cross-Compl. ¶ 7; Am. Interpleader Compl. ¶ 3.
21   Fiduciary Trust International of California ("FTIC")
22   and Fiduciary Trust Company International ("FTCI") were
23   subsidiaries of Franklin.  Cross-Compl. ¶ 7.
24   Prudential issued a group life insurance policy to
25   Franklin, bearing group policy number G-50408-CA ("the
26   Plan" or "Group Contract").  Id. at ¶ 8.  The Plan
27   provides employee term life and other benefits to
28   qualified employees of Franklin and its associated

companies and is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").  Dkt. # 63 at 2.  The Insured was eligible for coverage under the Plan.  <u>Id.</u>

The Plan provided Basic and Optional Employee Term Life benefits, Basic Accidental Death benefits, and other benefits to qualified employees of Franklin and its associated companies.  Am. Interpleader Compl. ¶ 7, Ex. A.

The Plan provides that the Basic Employee Term Life benefit is 150% of the insured's annual earnings, not including commissions, bonuses, or other extra compensation, up to a maximum Basic Employee Term Life benefit amount of $500,000.  <u>Id.</u> at 5-6, 43.  The maximum Optional Employee Term Life benefit is $1,000,000 minus the Basic Employee Term Life benefit amount.  <u>Id.</u> at 5-6.

On August 29, 2012, the Insured was found dead. Dkt. # 63 at 2.  At the time of his death, the Insured was covered under the Group Contract for Basic Employee Term Life benefits in the amount of $375,000 and Optional Employee Term Life benefits in the amount of $625,000, for a total of $1,000,000 (collectively, "Term Life benefits").  <u>Id.</u>  Prudential later determined that an Accidental Death benefit was available in the amount of $375,000 ("Accidental Death benefit").  <u>Id.</u>  However, Mrs. Brimberry disputes that the Accidental Death benefit was properly calculated

1   and believes the amount to be $1,000,000.  Id.; Dkt. #
2   64 at 4.

3       As the designated beneficiary, Mrs. Brimberry
4   submitted to Prudential a claim to the benefits.  Dkt.
5   # 63 at 2.  Defendants FTIC, FTCI and Franklin
6   (collectively, "Fiduciary Trust") submitted to
7   Prudential a competing claim to the benefits, arguing
8   that Fiduciary Trust was entitled to a constructive
9   trust over the benefits because the Insured allegedly
10  misappropriated funds while employed with Franklin.
11  Id.

12  **B.  Procedural Background**

13      On January 2, 2013, Prudential filed this
14  interpleader Action in the United States District Court
15  for the District of New Jersey against Mrs. Brimberry
16  and Fiduciary Trust [1].  In its Interpleader
17  Complaint, Prudential sought to deposit the Term Life
18  benefits due under the Group Contract as a consequence
19  of the death of Mr. Brimberry.  Prudential alleged that
20  interpleader was required because both Mrs. Brimberry
21  and Fiduciary Trust made competing claims to the death
22  benefit.  On January 24, 2013, Prudential filed a
23  Motion for Interpleader Relief, seeking to deposit the
24  Term Life benefits with the court and for discharge
25  [11].

26      Thereafter, on March 1, 2013, Prudential filed an
27  Amended Interpleader Complaint [29].  Prudential's
28  amended pleading added allegations to account for its

recently completed accidental death investigation and determination that an Accidental Death benefit was also due under the Group Contract in the amount of $375,000. Am. Interpleader Compl. ¶¶ 37-39.  On March 8, 2013, Prudential filed a Supplemental Motion for Interpleader Relief, seeking the same relief as in its previous motion [32].

    In addition to opposing interpleader, Fiduciary Trust filed a Motion to Change Venue [13] and Mrs. Brimberry filed a Motion to Transfer the case to the Central District of California [18].  On September 23, 2013, the District of New Jersey transferred the case to this Court [46].  Prudential's Supplemental Motion for Interpleader Relief, which incorporated the original Motion for Interpleader Relief, remained outstanding upon transfer.

    On October 25, 2013, Prudential deposited the Term Life benefits in the total amount of $1,000,000 plus $5,653.66, representing 0.5% interest from the date of Mr. Brimberry's death, and the Accidental Death benefit in the amount of $375,000 plus $2,125.26, representing 0.5% interest from the date of Mr. Brimberry's death [61].

    On November 19, 2013, Prudential re-noticed its Motion for Supplemental Interpleader Relief [72].

    On December 23, 2013, Mrs. Brimberry and Fiduciary Trust filed their Answers to Prudential's Amended Interpleader Complaint [80,84].  Mrs. Brimberry filed a

Cross-Complaint for violation of ERISA against Prudential, Fiduciary Trust, and the Plan [81].

In her Cross-Complaint, Mrs. Brimberry makes various ERISA claims against Prudential and Fiduciary Trust, including, *inter alia*, § 502(a)(1)(B) to recover benefits; § 502(a)(2) for breach of fiduciary duty; and § 502(a)(5) for equitable relief.  Cross-Compl. ¶¶ 1, 32.

On January 3, 2014, the Court issued an order granting in part and denying in part Prudential's Motion for Interpleader Relief and Motion for Supplemental Interpleader Relief [87].  The Court granted interpleader relief and discharged Prudential with regard to the Term Life benefits, but because there was a dispute as to the amount of the Accidental Death benefit, the Court denied discharge with regard to the Accidental Death benefit [87].

On February 14, 2014, Prudential filed a motion for summary judgment and motion to dismiss Mrs. Brimberry's Cross-Complaint [102].

On April 22, 2014, Prudential and Mrs. Brimberry filed a joint stipulation for settlement of partial claims [115].  As part of that settlement, Prudential agreed to withdraw its motion for summary judgment and motion to dismiss, and Mrs. Brimberry stipulated to dismiss all of the claims she asserted against Prudential in her Cross-Complaint, except for Mrs. Brimberry's claim that the Accidental Death benefit is

1  more than $375,000 [115].  Prudential and Mrs.

2  Brimberry agreed that they would file cross-motions for

3  summary judgment with respect to the amount of the

4  Accidental Death benefit.  Following the resolution of

5  those cross-motions for summary judgment, Prudential

6  and Mrs. Brimberry stipulated that Prudential would be

7  dismissed from this lawsuit and that the Court would

8  retain jurisdiction over Fiduciary Trust and Mrs.

9  Brimberry to resolve the remaining issues.  The Court

10 granted that stipulation on April 24, 2014 [117].

11     On May 15, 2014, Prudential and Mrs. Brimberry

12 filed their Cross-Motions for Summary Judgment [120,

13 121].  Prudential and Mrs. Brimberry filed their

14 respective Oppositions on June 4, 2014 [123, 125] and

15 their Replies on June 11, 2014 [126, 127].  The Cross-

16 Motions were set for hearing on June 25, 2014, and were

17 taken under submission on June 19, 2014 [129].

18                    **II. LEGAL STANDARD**

19 **1.  Motion for Summary Judgment**

20     Summary judgment is appropriate when there is no

21 genuine issue of material fact and the moving party is

22 entitled to judgment as a matter of law.  Fed. R. Civ.

23 P. 56(c).  A fact is "material" for purposes of summary

24 judgment if it might affect the outcome of the suit,

25 and a "genuine issue" exists if the evidence is such

26 that a reasonable fact-finder could return a verdict

27 for the non-moving party.  Anderson v. Liberty Lobby,

28 Inc., 477 U.S. 242, 248 (1986).  The evidence, and any

inferences based on underlying facts, must be viewed in the light most favorable to the opposing party. Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1329 (9th Cir. 1983).

Where the moving party does not have the burden of proof at trial on a dispositive issue, the moving party may meet its burden for summary judgment by showing an "absence of evidence" to support the non-moving party's case. Celotex v. Catrett, 477 U.S. 317, 325 (1986).

The non-moving party, on the other hand, is required by Fed. R. Civ. P. 56(c) to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Id. at 324. Conclusory allegations unsupported by factual allegations are insufficient to create a triable issue of fact so as to preclude summary judgment. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993). A non-moving party who has the burden of proof at trial must present enough evidence that a "fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." Anderson, 477 U.S. at 255.

In ruling on a motion for summary judgment, the Court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. Anderson, 477 U.S. at 255.

### III. ANALYSIS

**A.   The Accidental Death Benefit is $375,000**

Prudential argues that summary judgment must be

granted in its favor because there is no genuine issue of material fact that the Accidental Death benefit is $375,000.

Mrs. Brimberry, on the other hand, argues that the Accidental Death benefit was improperly calculated and that she is entitled to at least $1,000,000 in Accidental Death benefits.

At issue here is the language in the Group Contract booklet-certificate.  Prudential argues that the Group Contract provides, on page 8 of the "Schedule of Benefits" section, that the benefit amount for Basic Accidental Death and Dismemberment Coverage ("the Accidental Death benefit") is an amount *equal* to the amount for which the insured is covered under the Basic Employee Term Life Coverage section ("Accidental Death Benefit Provision").  Am. Interpleader Compl. ¶ 7, Ex. A at 8.  Specifically, the Accidental Death Benefit Provision states:

**BASIC ACCIDENTAL DEATH AND DISMEMBERMENT COVERAGE**

**BENEFIT AMOUNTS UNDER EMPLOYEE INSURANCE:**

**Amount for Each Benefit Class:** *An amount equal to the amount for which you are insured under the Basic Employee Term Life Coverage.*  For this purpose only, that amount will be the amount as determined above, except that if your Basic Employee Term Life Coverage is reduced by any amount paid under the Option to Accelerate

Payment of Death Benefits, that reduction will not apply to this Coverage.

Id. (emphasis added).

However, Mrs. Brimberry asserts that another provision of the Group Contract, on page 34 of the "Basic Accidental Death and Dismemberment Coverage" section, states that the Accidental Death benefit is equal to 100% of "Your Amount of Insurance." Mrs. Brimberry argues that that provision ("the Benefit Amount Payable Provision"), which describes how benefits for accidental loss are calculated, is ambiguous and thus precludes summary judgment in Prudential's favor. The Benefit Amount Payable Provision states:

> **Benefit Amount Payable:** The amount payable depends on the type of Loss as shown below. All benefits are subject to the Limits below:
>
> Percent of
>
> *Your Amount of Insurance*
>
> Loss (Including Loss of Use) of or by Reason of:
>
> Life . . . . . . . . . . . . . . . . . . 100%

Id. at 33-34 (emphasis added).

Mrs. Brimberry maintains that Mr. Brimberry was eligible for $375,000 in Basic Employee Term Life benefits and $625,000 in Optional Term Employee Life benefits, totaling $1,000,000. Thus, Mrs. Brimberry

argues, the phrase "Your Amount of Insurance" above includes *both* the Basic Employee Term Life benefits of $375,000 and the Optional Employee Term Life benefits of $625,000.  Mrs. Brimberry avers that, based on this language, she is entitled to at least a total of $1,000,000 in Accidental Death benefits.

The Court finds that, pursuant to the Accidental Death Benefit Provision, the Accidental Death benefit is an amount equal to the amount for which Mr. Brimberry was covered under the Basic Employee Term Life Coverage section (the Basic Employee Term Life benefit), or $375,000.

Although an ERISA plan is a contract, ERISA does not contain a body of contract law to govern the interpretation and enforcement of employee benefit plans.  Gilliam v. Nev. Power Co., 488 F.3d 1189, 1194 (9th Cir. 2007).  Courts therefore apply contract principles derived from state law guided by the policies expressed in ERISA and other federal labor laws.  Id.  In California, terms and provisions must be read in their ordinary and popular sense, but each must be interpreted in the context of the contract as a whole and the circumstances of the case.  Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 5 Cal. 4th 854, 867 (1993).

Summary judgment is appropriate in a contract case when the contract terms are clear and unambiguous, even though the parties may disagree as to their meaning.

<u>Krishan v. McDonnell Douglas Corp.</u>, 873 F. Supp. 345, 352 (C.D. Cal. 1994) (citing <u>Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.</u>, 752 F.2d 1401, 1406 (9th Cir. 1985)).   Whether an ERISA plan is ambiguous is a matter of law.   <u>Id.</u> (citing <u>Alexander v. Primerica Holdings, Inc.</u>, 967 F.2d 90, 92 (9th Cir. 1991)).

A contract term is ambiguous if the words are "reasonably susceptible" to more than one construction or interpretation.   <u>Id.</u> (citing <u>Castaneda v. Dura-Vent Corp.</u>, 648 F.2d 612, 619 (9th Cir. 1981)).   Summary judgment is proper where the words in question are not reasonably susceptible to the interpretation offered by the party claiming ambiguity.   <u>Id.</u> (citing <u>Brobeck, Phleger & Harrison v. Telex Corp.</u>, 602 F.2d 866, 871 (9th Cir. 1979)).

Further, terms in ERISA insurance policies are interpreted "in an ordinary and popular sense as would a [person] of average intelligence and experience." <u>Evans v. Safeco Life Ins. Co.</u>, 916 F.2d 1437, 1441 (9th Cir. 1990) (citing <u>Allstate Ins. Co. v. Ellison</u>, 757 F.2d 1042, 1044 (9th Cir. 1985)).   "When disputes arise, courts should first look to explicit language of the agreement to determine, if possible, the clear intent of the parties.   The intended meaning of even the most explicit language can, of course, only be understood in the light of the context that gave rise to its inclusion." <u>Gilliam</u>, 488 F.3d at 1194.

1    A court may not "artificially create ambiguity
2  where none exists.  If a reasonable interpretation
3  favors the insurer and any other interpretation would
4  be strained, no compulsion exists to torture or twist
5  the language of the policy." <u>Evans</u>, 916 F.2d at 1441.
6  Moreover, courts must interpret each provision
7  consistent "with the entire document such that no
8  provision is rendered nugatory." <u>Gilliam</u>, 488 F.3d at
9  1194 (citing <u>Richardson v. Pension Plan of Bethlehem</u>
10 <u>Steel Corp.</u>, 112 F.3d 982, 984 (9th Cir. 1997)).

11   When a plan is ambiguous, a court typically "will
12 examine extrinsic evidence to determine the intent of
13 the parties." <u>Id.</u> (citing <u>Richardson</u>, 112 F.3d at
14 984).  If an ambiguity exists, the court must resolve
15 it in favor of the insured. <u>Babikian v. Paul Revere</u>
16 <u>Life Ins. Co.</u>, 63 F.3d 837, 840 (9th Cir. 1995).

17   The Court finds that the Accidental Death Benefit
18 Provision is not ambiguous.  The Accidental Death
19 Benefit Provision states that the Accidental Death
20 benefit is "[a]n amount equal to the amount for which
21 you are insured under the Basic Employee Term Life
22 Coverage." Dkt. # 11-4, Ex. C at 8.  This contract
23 term is not reasonably susceptible to more than one
24 construction or interpretation.  Quite clearly, the
25 provision provides the framework for which the
26 Accidental Death benefit must be calculated.  The
27 explicit language of the Accidental Death Benefit
28 Provision expressly limits coverage under the Basic

Accidental Death and Dismemberment section as an amount *equal* to the Basic Employee Term Life benefit and does not include the Optional Employee Term Life benefit in the calculation.

Thus, the Court finds that the Accidental Death Benefit Provision in the Group Contract clearly supports that the Accidental Death benefit is equal to the Basic Employee Term Life benefit, which Mrs. Brimberry concedes is $375,000. See Cross-Compl. ¶ 14.

Mrs. Brimberry attempts to raise a genuine issue of material fact by pointing to the Benefit Amount Payable Provision in the Group Contract, which describes how benefits for accidental loss are calculated. Mrs. Brimberry asserts that the "Your Amount of Insurance" language located in the Benefit Amount Payable Provision supports that the Accidental Death benefit equals the combined amount of *both* the Basic and Optional Employee Term Life benefits. Mrs. Brimberry argues that Prudential could have stated that the amount payable for accidental death was 100% of "Your Amount of *Basic* Insurance" instead of stating that the amount payable was 100% of "Your Amount of Insurance."

The Court finds Mrs. Brimberry's argument unpersuasive. First, as Prudential correctly argues, the proper inquiry when determining whether policy language is ambiguous is not whether other words *could* have been used, but whether the words actually used are susceptible to other reasonable interpretations. As

noted above, the Accidental Death Benefit Provision is not reasonably susceptible to more than one construction or interpretation.  Additionally, no language under the Benefit Amount Payable Provision refers to the Optional Employee Term Life benefit.  Further, given the clear language in the Accidental Death Benefit Provision stating that the amount of available insurance under the Basic Accidental Death and Dismemberment Coverage section is an amount *equal* to the amount of insurance under the Basic Employee Term Life Coverage section, it would be superfluous to state that the amount payable for accidental death was 100% of the "Amount of Basic Insurance."  Rather, the Benefit Amount Payable Provision cited by Mrs. Brimberry reiterates that the "Benefit Amount Payable" is "[n]o more than your Amount of Insurance under this Coverage" (here, $375,000) and that an accidental loss of life provides 100% thereof.

Courts must interpret each provision consistent "with the entire document such that no provision is rendered nugatory." <u>Gilliam</u>, 488 F.3d at 1194.  Here, Mrs. Brimberry's interpretation of the Benefit Amount Payable Provision would render the Accidental Death Benefit Provision nugatory.  More specifically, if the Court were to adopt Mrs. Brimberry's reading of the Benefit Amount Payable Provision, then the Accidental Death Benefit Provision would be incomplete and would create a new definition for the Accidental Death

Benefit.  In other words, Mrs. Brimberry's proposed interpretation of the Benefit Amount Payable Provision would render meaningless the language in the plan documents stating that the Accidental Death benefit equals *only* the Basic Employee Term Life benefit. Gillian, 488 F.3d at 1194; see Voight v. Metro. Life Ins. Co., 28 F. Supp. 2d 569, 576 (C.D. Cal. 1998). Instead, reading the Benefit Amount Payable Provision to mean that the insured is entitled to 100% of the amount of the Basic Employee Term Life Coverage would be entirely consistent with the Accidental Death Benefit provision and would not render the Accidental Death Benefit provision meaningless.

The Court also notes that the Accidental Death Benefit Provision is located on page 8 of the Group Contract and that the Benefit Amount Payable Provision is located on page 34 of the Group Contract.  Thus, the Benefit Amount Payable Provision *follows* the Accidental Death Benefit Provision.  Accordingly, the Court finds that the "Your Amount of Insurance" language in the Benefit Amount Payable Provision merely refers to the amount of insurance to which the Insured is eligible under the Basic Employee Term Life Coverage section. In the context of the Group Contract as a whole, the only reasonable interpretation is that the phrase "Your Amount of Insurance" refers to the Basic Employee Term Life benefit - or $375,000.  As such, the Court finds that the Benefits Amount Payable Provision is not

ambiguous, as it is not reasonably susceptible to more than one meaning.

Mrs. Brimberry refers the Court to the Accidental Death Benefit Provision and argues that the phrase "for this purpose only" suggests that for other purposes, the "amount" of the benefit is not limited to the amount of the Basic Term Life Coverage. Mrs. Brimberry also argues that the Accidental Death Benefit Provision states that "[f]or this purpose only, that amount will be the amount as determined *above*" yet a reasonable insured would understand that provision to apply only to the provisions *preceding* page 8, not to the provisions following page 8. Mrs. Brimberry asserts that a reasonable insured would understand that page 8 has no application to benefits that are described later in the policy. However, as Prudential correctly points out, the phrase "for this purpose only" refers to the "purpose of determining the amount of Basic Accidental Death and Dismemberment Coverage," (Dkt. # 11-4, Ex. C at 8.) which is the exact question at issue in Prudential's Motion for Summary Judgment. And, it is clear that the Accidental Death Benefit Provision is applicable to the provisions following that provision – the Benefit Amount Payable Provision on page 34 even reiterates that the "Benefit Amount Payable" is "[n]o more than your Amount of Insurance under this Coverage" (here, $375,000) and that an accidental loss of life provides 100% thereof. The coverage to which that

provision is referring is the Basic Accidental Death

and Dismemberment Coverage - and page 8 of the policy

(the Accidental Death Benefit provision) explains the

scope of that coverage.  Mrs. Brimberry cannot

"artificially create ambiguity" where none exists.  <u>See</u>

<u>Evans</u>, 916 F.2d at 1441.

Mrs. Brimberry further argues that, by placing

language relating to accidental death in different

sections of policy - the Accidental Death Benefit

Provision on page 8 and the Benefit Amount Payable

Provision on page 34 - Prudential has injected an

ambiguity.  However the Court finds this argument

unavailing.  The Table of Contents on page 3 of the

group contract explicitly refers to the "Schedule of

Benefits" section as beginning on page 5.  <u>See</u> Am.

Interpleader Compl. ¶ 7, Ex. A at 3.  The "Schedule of

Benefits" section appears in the beginning of the group

contract and explains how the (1) the Basic Employee

Term Life Coverage, (2) the Optional Employee Term Life

Coverage, and (3) Basic Accidental Death and

Dismemberment Coverage benefits are calculated.  <u>Id.</u> at

5-8.  The language in this section could not be more

clear.  The Basic Employee Term Life Coverage is "150%

of your annual earnings," which the Parties agree is

$375,000.  The maximum amount of Optional Employee Term

Life Coverage is "$1,000,000 minus your amount of

Insurance under the Basic Employee Term Life Coverage,"

which the Parties agree is $675,000.  And, pursuant to

1   the Accidental Death Benefit Provision, the Basic

2   Accidental Death and Dismemberment Coverage is "[a]n

3   amount equal to the amount for which you are insured

4   under the Basic Employee Term Life Coverage," which is

5   $375,000.  The Accidental Death Benefit Provision so

6   clearly states that the Accidental Death Benefit is an

7   amount equal to *only* the Basic Employee Term Life

8   benefit, that an interpretation of "Percent of Your

9   Amount of Insurance" to include both Basic and Optional

10  Employee Term Life benefits would be unreasonable.

11      As to Mrs. Brimberry's argument that N.Y. Life Ins.

12  Co. v. Hiatt, 140 F.2d 752 (9th Cir. 1944) governs the

13  instant case, the Court finds her argument

14  unpersuasive.  In Hiatt, a life insurance policy had a

15  stamp, in purple ink, on both the cover page and on the

16  bottom of the first policy page, stating "Double

17  Indemnity for fatal accident." Id. at 752.  The

18  carrier argued that a rider in another part of the

19  policy withdrew coverage for accidental death by

20  inhalation of gas, the cause of death of the insured.

21  Id.  The Ninth Circuit refused to apply the rider,

22  reasoning that the carrier could have easily avoided

23  ambiguity by calling attention to the limitations

24  (contained in the rider) within the stamped language.

25  Id. at 753.  Thus, the Ninth Circuit held that the

26  stamped matter must be taken as part of the contract

27  and was prevailing over the rider.  Id. at 754.

28      The Ninth Circuit in Hiatt appeared to be

especially concerned that the insured relied on the prominent, stamped phrase "Double Indemnity for Fatal Accident" and noted that the "presence of the stamped matter was the decisive factor in effecting the sale of the policy." Id. at 753.  Indeed, the Ninth Circuit noted that a reasonable insurer who saw the prominently stamped phrase "Double Indemnity for Fatal Accident" – both on the cover page and again in the bottom of the first policy page – would be led to believe that the phrase was intended to afford a measure of protection broader than that indicated in the printed language of the rider.  Id.  Here, in contrast to Hiatt, the phrase to which Mrs. Brimberry asserts is controlling, "Percent of Your Amount of Insurance," is not prominently stamped or otherwise obvious on the cover page or at the bottom of the first page of the policy. See Am. Interpleader Compl. ¶ 7, Ex. A at 34.  Because that phrase not prominently located on the cover page of the policy, the concern that an insured would unreasonably rely upon that phrase to believe that he was entitled to the total amount of insurance is not present here.  The phrase "Percent of Your Amount of Insurance" also does not explicitly state that the amount is equal to the total amount of Basic and Optional Employee Term Life benefits.

Mrs. Brimberry cites to Tanjuatco v. Allstate Ins. Co., No. C-94-00637 MHP, 1994 WL 721418, at *5 (N.D. Cal. 1994) to support her argument that the language in

the group contract limiting the Basic Accidental Death and Dismemberment Coverage to include only Basic Employee Term Life Coverage is not set forth "conspicuously, plainly, and clearly."  Notwithstanding the questionable applicability of that rule, the coverage amount defined in the Accidental Death Benefit Provision is "conspicuous, plain and clear," as it explicitly states that the Basic Accidental Death and Dismemberment Coverage amoount is "an amount equal to the amount for which you are insured under the Basic Employee Term Life Coverage."  Id.

As to Mrs. Brimberry's argument that California courts do not apply "technical construction" to deny benefits under double indemnity clauses pursuant to Fitzpatrick v. Metro. Life Ins. Co., 15 Cal. App. 2d 155 (1938), the Court similarly finds this argument unavailing.  Mrs. Brimberry relies upon the statement in Fitzpatrick in which the court indicated that, when an insurance company offers special inducements to become insured against the risk of injury of accidental death by promising payment of a double indemnity, "technical construction of the wording of the double indemnity clause will not be indulged in, but the terms thereof will be interpreted in their ordinary and popular sense."  Id. at 158.  However, in reading the Accidental Death Benefit Provision and the Benefit Amount Payable Provision in their "ordinary and popular sense," the interpretation is quite clear.  As

indicated above, the Accidental Death Benefit Provision expressly limits coverage under the Basic Accidental Death and Dismemberment section as an amount *equal* the Basic Employee Term Life benefit and does not include the Optional Employee Term Life benefit in the calculation.  Further, the Benefit Amount Payable Provision merely reiterates that the "Benefit Amount Payable" is "[n]o more than your Amount of Insurance under this Coverage" (here, $375,000) and that an accidental loss of life provides 100% thereof.

In spite of Mrs. Brimberry's efforts to read ambiguity into the Group Contract language, the Court finds that the terms of the Group Contract are not ambiguous.  The clear terms of the Group Contract support that Prudential properly calculated the Accidental Death benefit by using the delineated method under the Accidental Death Benefit Provision. Prudential properly calculated the Accidental Death Benefit as an amount equal to the Basic Employee Term Life Coverage, which calculates to $375,000.

Accordingly, the Court **GRANTS** Prudential's Motion for Summary Judgment and **DENIES** Mrs. Brimberry's Motion for Summary Judgment.

### IV. CONCLUSION

Pursuant to the above analysis, the Court **GRANTS** Prudential's Motion for Summary Judgment and **DENIES** Mrs. Brimberry's Motion for Summary Judgment.  Because the Court **GRANTS** Prudential's Motion for Summary

1  Judgment, and pursuant to the Joint Stipulation between
2  Prudential and Mrs. Brimberry (Dkt. # 117), all claims
3  against Prudential are dismissed with prejudice and
4  Prudential is dismissed with prejudice from this
5  Action.
6
7  **IT IS SO ORDERED.**
8  DATED: July 11, 2014            RONALD S.W. LEW
                                   _____
9                                 **HONORABLE RONALD S.W. LEW**
                                   Senior U.S. District Judge
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28