# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| The Prudential Insurance Company of America,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>P. Kellie Brimberry; Fiduciary Trust Company International; Fiduciary Trust International of California; Franklin Templeton Companies, LLC,<br><br>　　　　　　Defendants. | CV 13-07429 RSWL (AJWx)<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW RE: PLAINTIFF THE PRUDENTIAL INSURANCE COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT** [120] **AND DEFENDANT P. KELLIE BRIMBERRY'S MOTION FOR SUMMARY JUDGMENT** [121] |
| P. Kellie Brimberry,<br><br>　　　　Cross-Claimant,<br><br>　　v.<br><br>Franklin Templeton Companies, LLC Group Contract G-50408-CA; Fiduciary Trust Company International; Fiduciary Trust International of California; Franklin Templeton Companies, LLC; The Prudential Insurance Company of America; and Does 1 through 50, inclusive,<br><br>　　　　Cross-Defendants. | |

//

1

After consideration of all the papers submitted pursuant to Plaintiff The Prudential Insurance Company of America's ("Prudential") Motion for Summary Judgment [120] and Defendant P. Kellie Brimberry's ("Mrs. Brimberry") Motion for Summary Judgment [121], the Court makes the following findings of fact and conclusions of law:

## **UNCONTROVERTED FACTS**

1. Prudential issued a group life insurance policy to Franklin Templeton Companies, LLC ("Franklin") bearing group policy number G-50408-CA ("the Plan" or "Group Contract"). Prudential's Statement of Uncontroverted Facts ("SUF") # 1; Mrs. Brimberry's Statement of Uncontroverted Material Facts and Conclusions of Law ("SUMFCL") # 1.

2. As a result of his employment with Fiduciary Trust International of California ("FTIC"), Kurt Brimberry ("the Insured") was eligible for coverage under the Group Contract. SUF # 3; SUMFCL # 2.

3. On or about August 29, 2012, the Insured was found dead. SUF # 4; SUMFCL # 9.

4. The amount for which the Insured was insured under the Basic Employee Term Life Coverage was $375,000. SUF # 6; SUMFCL # 22.

5. The Prudential policy provided the Insured with Optional Term Life Coverage in the amount of $625,000. SUMCFL # 23.

6. The Prudential policy provided the Insured with

coverage for "accidental death and dismemberment." SUMCFL # 24.

7. On October 25, 2012, Prudential deposited with the Court the amount of $1,375,000, excluding claim interest. SUF # 8.

## CONCLUSIONS OF LAW

1. Although an ERISA plan is a contract, ERISA does not contain a body of contract law to govern the interpretation and enforcement of employee benefit plans. Gilliam v. Nev. Power Co., 488 F.3d 1189, 1194 (9th Cir. 2007). Courts therefore apply contract principles derived from state law guided by the policies expressed in ERISA and other federal labor laws. Id.

2. In California, terms and provisions must be read in their ordinary and popular sense, but each must be interpreted in the context of the contract as a whole and the circumstances of the case. Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 5 Cal. 4th 854, 867 (1993).

3. Summary judgment is appropriate in a contract case when the contract terms are clear and unambiguous, even though the parties may disagree as to their meaning. Krishan v. McDonnell Douglas Corp., 873 F. Supp. 345, 352 (C.D. Cal. 1994) (citing Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1406 (9th Cir. 1985)).

1    4. Whether an ERISA plan is ambiguous is a matter
2 of law. Id. (citing Alexander v. Primerica Holdings,
3 Inc., 967 F.2d 90, 92 (9th Cir. 1991)).
4    5. A contract term is ambiguous if the words are
5 "reasonably susceptible" to more than one construction
6 or interpretation. Id. (citing Castaneda v. Dura-Vent
7 Corp., 648 F.2d 612, 619 (9th Cir. 1981)).
8    6. Summary judgment is proper where the words in
9 question are not reasonably susceptible to the
10 interpretation offered by the party claiming ambiguity.
11 Id. (citing Brobeck, Phleger & Harrison v. Telex Corp.,
12 602 F.2d 866, 871 (9th Cir. 1979)).
13    7. Terms in ERISA insurance policies are
14 interpreted "in an ordinary and popular sense as would
15 a [person] of average intelligence and experience."
16 Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th
17 Cir. 1990) (citing Allstate Ins. Co. v. Ellison, 757
18 F.2d 1042, 1044 (9th Cir. 1985)).
19    8. "When disputes arise, courts should first look
20 to explicit language of the agreement to determine, if
21 possible, the clear intent of the parties.  The
22 intended meaning of even the most explicit language
23 can, of course, only be understood in the light of the
24 context that gave rise to its inclusion." Gilliam, 488
25 F.3d at 1194.
26    9. A court may not "artificially create ambiguity
27 where none exists.  If a reasonable interpretation
28 favors the insurer and any other interpretation would

4

be strained, no compulsion exists to torture or twist the language of the policy." Evans, 916 F.2d at 1441.

10. Courts must interpret each provision consistent "with the entire document such that no provision is rendered nugatory." Gilliam, 488 F.3d at 1194 (citing Richardson v. Pension Plan of Bethlehem Steel Corp., 112 F.3d 982, 984 (9th Cir. 1997)).

11. When a plan is ambiguous, a court typically "will examine extrinsic evidence to determine the intent of the parties." Id. (citing Richardson, 112 F.3d at 984). If an ambiguity exists, the court must resolve it in favor of the insured. Babikian v. Paul Revere Life Ins. Co., 63 F.3d 837, 840 (9th Cir. 1995).

12. The Group Contract provides, on page 8 of the "Schedule of Benefits" section, that the benefit amount for Basic Accidental Death and Dismemberment Coverage ("the Accidental Death benefit") is an amount *equal* to the amount for which the insured is covered under the Basic Employee Term Life Coverage section ("Accidental Death Benefit Provision"). Am. Interpleader Compl. ¶ 7, Ex. A at 8. The Accidental Death Benefit Provision in the Group Contract is clear and unambiguous, as it clearly supports that the Accidental Death benefit is equal to the Basic Employee Term Life benefit, which Mrs. Brimberry concedes is $375,000.

13. Another provision of the Group Contract, on page 34 of the "Basic Accidental Death and Dismemberment Coverage" section, states that the

5

Accidental Death benefit is equal to 100% of "Your Amount of Insurance." This provision ("the Benefit Amount Payable Provision"), which describes how benefits for accidental loss are calculated, is clear and unambiguous, as it reiterates that the "Benefit Amount Payable" is "[n]o more than your Amount of Insurance under this Coverage" (here, $375,000) and that an accidental loss of life provides 100% thereof.

14. Courts must interpret each provision consistent "with the entire document such that no provision is rendered nugatory." Gilliam, 488 F.3d at 1194. Mrs. Brimberry's proposed interpretation of the Benefit Amount Payable Provision would render meaningless the language in the plan documents stating that the Accidental Death benefit equals *only* the Basic Employee Term Life benefit. Gillian, 488 F.3d at 1194; see Voight v. Metro. Life Ins. Co., 28 F. Supp. 2d 569, 576 (C.D. Cal. 1998).

15. Because the provisions in the Group Contract are clear and unambiguous, summary judgment in Prudential's favor is appropriate.

**IT IS SO ORDERED.**

DATED: July 11, 2014

RONALD S.W. LEW
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge